O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SACV 12-1101 DOC (MLGx)            Date: January 16, 2012

Title: BUDGET BLINDS INC. V. JOSH JAMES LECLAIR

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | N/A |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

None Present                                      None Present

**PROCEEDINGS: (IN CHAMBERS):**    **ORDER DENYING PETITION TO VACATE ARBITRATION AWARD, GRANTING CROSS-PETITION TO CONFIRM AWARD AND RESERVING DECISION ON MOTION FOR SANCTIONS**

     Before the Court are three motions. Budget Blinds Inc. has filed an Amended Petition To Vacate An Arbitration Award (Dkt. 27, hereafter Pet.), Josh James LeClair has filed an Opposition And Cross-Petition To Confirm Arbitration Award (Dkt. 29, hereafter Opp.). For convenience, the parties will be referred to as Budget Blinds and LeClair respectively. LeClair has also filed a Motion For Sanctions (Dkt. 31).[1]

## I. Facts[2]

     Budget Blinds is a nationally known window covering business. LeClair applied to become a franchisee, and signed a Franchise Agreement on May 9, 2007. The Agreement's effective date was June 12, 2007, with an initial term for ten years, and an expiration date on

---

[1] In a separate action, Budget Blinds has sued LeClair for breach of the Franchise Agreement (Dkt. 1, SA CV 12-1100 DOC (MLGx)).

[2] The factual summary is largely drawn from the factual recitation in the arbitrator's Final Award (Ex. BB to Mulcahy Decl., hereafter Final Award).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-1101-DOC (MLGx)  Date: January 16, 2013
Page 2

July 31, 2017.  LeClair was assigned a territory in the Northeast area of Madison, Wisconsin.  His territory was surrounded by territory belonging to another franchisee, Jeffrey Morris.

Morris and LeClair meet soon after LeClair's franchisee training, and agreed that each could sell in the other's territory to contacts they had developed from prior customers, friends relatives, and networking contacts.  (LeClair's territory was previously a "gray area," meaning an area not owned by any franchisee.)  The arbitrator further found that the men agreed they would not canvass into each other's territory, and there was no evidence either one had done so.  For nearly four years, the men ran their franchises with the above understanding,[3] until Morris complained to Budget Blinds that LeClair was selling in his territory.  All along, sales by LeClair, including any contended to be outside his territory, were reported to Budget Blinds through Budget Blinds' record keeping, management, and e-mail system, called B-Fast.

In the fall of 2008, LeClair began exploring the idea of a business that cleaned and repaired blinds, to be called Window Valet.  LeClair testified at the arbitration hearing, without contradiction, that he discussed that idea with principals of Budget Blinds, at conventions in 2009 and 2010, and that those Budget Blinds principals indicated no interest in the idea.  The arbitrator found that LeClair operated his franchise and Window Valet separately.

On April 5, 2011, LeClair's former office manager told Morris that LeClair was making unauthorized sales into Morris' territory.  This led to Morris complaining to Budget Blinds, and then to Budget Blinds looking at B-Fast records and e-mails on the Budget Blinds system.  The arbitrator found that, prior to filing the Demand for Arbitration, Budget Blinds never contacted LeClair about Morris' complaint, or about Budget Blinds' investigation, and never provided him any sort of notice as to the complaints that became part of the arbitration demand.

Budget Blinds filed a Demand For Arbitration on May 6, 2011, alleging claims of breach of the Franchise Agreement, specifically Sections 2.4 (prohibiting unauthorized sales outside of one's territory) and 8.09 (prohibiting running a competing business), misappropriation of trade secrets, declaratory relief, and injunctive relief.  The declaratory

---

[3] There is a dispute about whether the agreement required each franchisee to call the other to give notice before a sale into the other's territory, Final Award 7, but this dispute is irrelevant for this Court's review.  Generally, such factual discrepencies will go uncommented on, as appropriate given the deference required to the arbitrator.  Further, Budget Blinds is not contesting in its Petition, for purposes of vacating the award, any of the arbitrator's findings against it as to the lack of a factual basis for any breach by LeClair of the Franchise Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-1101-DOC (MLGx)            Date: January 16, 2013
                                                                                                                                         Page 3

judgment Budget Blinds sought was that it was entitled to terminate the Franchise Agreement without further notice, and that LeClair was bound by the post termination provisions of the Agreement.[4] The injunctive relief requested would prohibit LeClair from owning a competitor business, as the term is defined in the Franchise Agreement.

      LeClair attempted to reach someone at Budget Blinds to discuss the allegations against him, but "at no time subsequent to the Demand for Arbitration was Mr. LeClair able to discuss the matters . . . with any representative of Budget Blinds," short of a referral to Budget Blinds' lawyer. Final Award 10. LeClair filed an answer denying Budget Blinds' allegations and making a counter-claim, as relevant here and detailed further in the analysis section, that Budget Blinds had constructively terminated the Franchise Agreement. Budget Blinds amended its Demand on September 29, 2011, with additional claims for breach of the Franchise Agreement.

      The arbitrator held hearings on October 17, 18, and 19, at the JAMS Resolution Center in Orange, CA. On the 19th, the arbitration was recessed until November 17, 2011. Parties then filed Closing Briefs. On January 3, 2012, the arbitrator issued her interim award.

      In her award, the arbitrator made clear that she had reviewed all testimony and evidence, and that to the extent her findings and determinations differed from any party's position, "that is the result of determinations as to credibility, relevance, burden of proof considerations and the weighing of the evidence." Final Award 4 (Ex. BB to Mulcahy Decl., hereafter Final Award). She also "considered all of the legal arguments and all authorities as applicable to the various theories" of each party. She ordered further submissions on damages, discussed below in Part III.c., and the Final Award, dated April 9, 2012, awarded LeClair $275,234.58, which includes attorneys' fees.

      Further facts will be discussed below in Part III as necessary.

## II. Legal Standard

      Under the Federal Arbitration Act, after a party to an arbitration applies to confirm the award, the "court must grant such an order unless the award is vacated, modified, or

---

[4] Oddly, both in the Demand For Arbitration and Amended Demand For Arbitration, Budget Blinds actually requests declaratory relief that "[t]he License Agreement is terminated due to Respondents' material breaches." Demand For Abritration 14, Ex. C to Mulcahy Decl.; Amended Demand For Arbitration 15, Ex. I to Mulcahy Decl. This would seem to seek termination outright, not merely a declaration that Budget Blinds could terminate LeClair without further notice. Neither party has addressed this language in its briefing.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 12-1101-DOC (MLGx)            Date: January 16, 2013
           Page 4

---

corrected as prescribed in sections 10 and 11 of [the Arbitration Act]. 8 U.S.C. § 9; *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010). The party seeking to vacate an award bears the burden of establishing grounds to vacate. *U.S. Life Ins. v. Super. Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). A court may vacate an award where the award was procured by corruption or fraud; where the arbitrator was partial or corrupt; where the arbitrator's misconduct prejudiced the rights of a party; or where the arbitrator exceeds his or her powers. 9 U.S.C. § 10. A court may only review an arbitration award based on these FAA grounds. *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F. 3d 727, 731-32 (9th Cir. 2006); *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003). Arbitrators "exceed their powers not when they merely interpret or apply governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." *Schoenduve Corp.* at 731 (quoting *Kyocera*, 341 F.3d at 997).

      A manifest disregard of the law means "'more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *TSYS Acquiring Solutions, LLC, v. Electronic Payment Systems, LLC*, 2009 U.S. Dist. LEXIS 98470 at *5-6 (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)). The test for finding manifest disregard requires a reviewing court to find that "the arbitrator misapplied or failed to apply the relevant law . . . in a manner that constitutes a blatant, gross error of law that is *apparent on the face of the award*." *D.R. Horton*, 361 F. Supp. 2d at 1100 (citation omitted) (emphasis added). And then such error, "no matter how obvious or outrageous" does not justify vacating an award unless there is evidence "reliably demonstrating" that the arbitrator's misapplication of the law was done "with knowledge of the error of that action and/or the intention to nullify the law or an awareness that he was doing so." *Id.*

      An additional, narrow ground to vacate is that a court cannot enforce an award that violates public policy. This exception that requires the public policy in question to be "explicit," "well defined and dominant." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1210 (9th Cir. 1989) (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983)).

      Budget Blinds argues that the Court should vacate the Final Award because the Arbitrator exceeded her powers, showed manifest disregard for the law, and violated public policy. Pet. 1.
      //
      //

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-1101-DOC (MLGx)            Date: January 16, 2013
                                                                                      Page 5

### III. Analysis

#### a. Budget Blinds' Claim That Constructive Termination Is Impossible

Budget Blinds' first argument is that the arbitrator's finding that Budget Blinds constructively terminated the Franchise Agreement amounts to "a manifest disregard for the law," and separately violates Budget Blinds' right to seek legal redress without incurring liability. Pet. 1; Cal. Code Civ P. § 1060.

To understand why the arbitrator's finding must be upheld, it is necessary to summarize several of her findings, as well as further testimony that she weighed as part of her determination, and the nature of constructive termination as a matter of Wisconsin law.

In his counterclaims, LeClair contended that Budget Blinds (1) failed to investigate before filing for arbitration, as required by the Franchise Agreement and the Wisconsin law incorporated in the Franchise Agreement; (2) refused LeClair's attempts to discuss the allegations to explore potential remedies; (3) terminated LeClair's access to the B-Fast Internet portal; (4) disconnected LeClair's franchise website; and (5) redirected LeClair's telephone, Internet, and other leads to Budget Blinds franchisees (Ex. J 336-36, 341-42).

Such claims were supported by testimony and the arbitrator's specific findings. LeClair and a Budget Blinds representative testified as to Budget Blinds shutting down his access to B-Fast, Hearing Transcript (Tr.) 539, 660-64, and redirecting his leads to another dealer, Tr. 660-64. Furthermore, the arbitrator found Budget Blinds presented "no evidence to contradict" LeClair's position that the provision against selling into another franchisee's territory was discriminatorily enforced against him, Final Award 14-15, 21. Indeed, Morris, the franchisee whose complaint led Budget Blinds to file its Demand against LeClair, admitted to selling into other franchisees' territory, and the arbitrator found evidence that other franchisees were making similar sales. *Id.* 15.

Wisconsin's Fair Dealership Law (Wisc. Stat. § 135 et seq.), which applies to the Franchise Agreement, *see* Franchise Agreement § 14.1, § 10.5, Final Award 11, provides that no grantor of a franchise "may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor." Wisc. Stat. § 135.03. A grantor must also provide a dealer with 90 days prior written notice "of termination, cancellation, nonrenewal or substantial change in competitive circumstances," and the grantor must provide a dealer with 60 days to cure any deficiency. Wisc. Stat. § 135.04. The arbitrator found that Budget Blinds did not comply with notice or cure requirements. Final Award 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-1101-DOC (MLGx)　　　　　　　　　　　　　　　Date: January 16, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6

---

　　　　As one court's description of constructive termination states, it "can occur when the grantor takes actions that amount to an 'effective end to the commercially meaningful aspects of the [dealership] relationship,' regardless of whether the formal contractual relationship between the parties continues in force." *Girls Scouts of Manitou Council v. Girl Scouts of U.S.A. Inc.*, 700 F. Supp. 2d 1055, 1079 (E.D. Wis. 2010), *aff'd in part, rev'd in part on other grounds*, 646 F.3d 983 (7th Cir. 2011).   Such a termination can occur "even when a grantor takes actions that merely have a 'serious effect on a dealer's ability to continue' in its current market." *Id.* (quoting *Wis. Compressed Air. Corp. v. Gardner Denver, Inc.*, 571 F. Supp. 2d 992, 1002 (W.D. Wis. 2008)).  LeClair contended that Budget Blinds cut him off from any contact, short of talking to their lawyer, Tr. 822-24, and that Budget Blinds' other actions, combined with singling him out for alleged violations, amounted to a constructive termination.  Given that evidence in the record, this Court does not see it as "completely irrational" or a "manifest disregard of the law" for the arbitrator to have found constructive termination.  As noted above, neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award" under the Federal Arbitration Act, "which is unambiguous in this regard." *Kyocera*, 341 F.3d at 994.  And if there is blatant error apparent on the face of an arbitration award, only a sufficient showing that the arbitrator's mistake of law was done with knowledge of the error, or intention to nullify the law, supports vacating an award. *D.R. Horton*, 361 F. Supp. 2d at 1100.

　　　　The arbitrator's finding of constructive termination is within this leeway—even if one assumed legal error, there is no evidence, for example, that the arbitrator understood the law to favor Budget Blinds, stated that law, then chose to disregard it. *See* 14 A.L.R. 6th 491.[5]

　　　　Most of Budget Blinds' counter-arguments are flawed, and the one with some merit does not meet the standard for vacating an award.  First, it appears Budget Blinds sees constructive termination as impossible so long as Budget Blinds did not actually terminate the Franchise Agreement.  But *Girl Scouts* makes clear that such a termination can happen even as the contract endures.  Second, the argument that the preliminary injunction against LeClair means that the arbitrator did not think the Franchise Agreement was terminated has the same flaw: an agreement can be constructively terminated, even if not formally terminated.  Third, Budget Blinds cites *Hansen Beverage Co. v. DSD Distributors, Inc.*,

---

[5] "The manifest disregard of the law standard for vacating an arbitration award is an extremely narrow and judicially created rule with limited applicability . . . The standard to be applied is whether the arbitrator understands and correctly states the law, and then boldly proceeds to disregard it in fashioning the award." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-1101-DOC (MLGx)            Date: January 16, 2013
                                                                                    Page 7

2008 U.S. Dist. LEXIS 101022 (S.D. Cal. 2008), to support the idea that it is a manifestly obvious legal principle to any arbitrator that a declaratory relief action does not interfere with the underlying contract. But *Hansen*'s discussion of the arbitration does not state that "plaintiff's initiation of the arbitration proceedings could not constitute a termination of the distribution agreement." Pet. 15. In the cited portion of *Hansen*, the district court does not consider the merits of the arbitration, and the contention of constructive termination is based on the allegation that the grantor had hired another distributor for a product in the franchisee's territory. *See Hansen*, 2008 U.S. Dist. LEXIS 101022 at *6. It is true that the grantor in *Hansen* filed an Arbitration Demand, and that the arbitrator did not find constructive termination, but those two facts, which appear in the distrct court's brief factual summary, are never causally linked, and are unrelated to the case's holding regarding a motion to dismiss for lack of subject matter jurisdiction. *Id.* at *17-18.

      A later date for the constructive termination finding — the arbitrator found termination as of May 11, 2011, when LeClair was served with the arbitration demand, may make more sense given the arbitrator's findings and testimony of Budget Blinds' actions toward LeClair after the filing of the arbitration demand. LeClair contends that the arbitration demand "was simply the catalyst of [Budget Blinds'] relentless campaign to destroy LeClair's businesses." Opp. 13. Budget Blinds counters that the termination date, which is prior to additional alleged actions such as turning off LeClair's e-mail access, means that those later actions could not have formed the basis of the arbitrator's constructive termination finding. Reply 3-5. Again, neither "erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award," *Kyocera*, 341 F.3d at 994, so even if this factual finding is an error, it would still remain within the broad range of allowable error that stops short of an arbitrator acknowledging the correct law and manifestly disregarding it.

      Finally, Budget Blinds' contention that the Final Award infringed on its right under the state and federal constitutions to petition for relief is, as LeClair notes, flawed because there was a broader showing to support the arbitrator's finding—failure to investigate, singling out LeClair instead of other violators, actions taken after the Demand. The public policy grounds for vacating an award is read narrowly. An explicit, well defined and dominant policy must exist, and that policy must specifically militates against the relief that the arbitrator orders. *Aramark Facility Servs. v. Service Employees Int'l Union, Local 1877*, 530 F.3d 817, 823 (9th Cir. 2008); *Stead*, 886 F.3d at 1212.

      Budget Blinds' cited case, *Pacific Gas and Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990) dealt with whether a common-law tort could be read to allow a claim where the interference alleged —intentional interference with contractual relations or with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-1101-DOC (MLGx)            Date: January 16, 2013
                                                                                        Page 8

---

prospective economic advantage—was the act of inducing someone to bring a potentially meritorious claim. *Id.* at 1123. By contrast, here the Wisconsin law statutorily provides a cause of action, Wis. Stat. § 135.06.[6]

### b. Arbitrator's Award Of Damages

Budget Blinds contends that the arbitrator also disregarded the law because she awarded LeClair speculative damages, damages he could not prove with reasonable certainty. Pet. 16. As an example, Budget Blinds notes that LeClair testified "that he was not an accountant, had no accounting background, had never performed a damage calculation before, was not familiar with fundamental accounting terms . . . and did not considered [sic] himself qualified to provide a damage calculation." *Id.*

Upon review of the record, this Court finds that Budget Blinds fails to meet its burden for vacating an award. Its argument seeks to re-litigate the arbitrator's factual findings and weighing of the evidence in a manner that is inconsistent with the limited scope of review for arbitration awards. *Kyocera*, 341 F.3d 987, 994 (9th Cir. 2003). Further, a reviewing court must both find that "the arbitrator misapplied or failed to apply the relevant law . . . in a manner that constitutes a blatant, gross error of law that is *apparent on the face of the award*." *D.R. Horton*, 361 F. Supp. 2d at 1100 (citation omitted) (emphasis added). And such error, "no matter how obvious or outrageous" does not justify vacating an award unless there is evidence "reliably demonstrating" that the arbitrator's misapplication of the law was done "with knowledge of the error of that action and/or the intention to nullify the law or an awareness that he was doing so." *Id.*

Here, at best, Budget Blinds contends that the arbitrator did not find facts in its favor, including on an affirmative defense of mitigating damages through future sales from Window Valet. *See* Reply 9; Pet. 16. For example, what Budget Blinds characterizes as the arbitrator "ignor[ing] LeClair's burden to prove his damages with reasonable certainty," *id.*, is a determination of the weight of evidence well within the arbitrator's discretion. Even if one assumes errors by the arbitrator, there is no gross error apparent on the face of the award, nor reliable sign such error was committed with intent to nullify the law. LeClair does not need to be an expert in damages calculation for the arbitrator to find that his figures, derived from his best efforts to make an accurate tally that included net profit

---

[6] Budget Blinds' argument that the arbitrator violated the company's litigation privilege, Civ. Code §47(b), similarly reads the litigation privilege too broadly given the additional actions, beyond filing an arbitration demand, that had supporting evidence. *See Fujisawa v. Compass Vision Inc.*, 735 F. Supp. 2d 1171, 1175 (N.D. Cal. 2010).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 12-1101-DOC (MLGx)                                Date: January 16, 2013
                                                                                                                                    Page 9

figures, carried his burden of persuasion. *See* Tr. 841. Budget Blinds appears to seize on LeClair's response, "probably not any more qualified than anyone," when questioned by Budget Blinds' lawyer whether he considered himself qualified to do a damages calculation. Tr. 917:21. This confession to being a layman when it comes to damages does not mean the arbitrator is bound to find that LeClair "was not qualified" to provide his damages calculation. Reply 9; *see* Cal. Evid. Code § 800.

      The arbitrator denied LeClair's proposed damages calculated from sales in gray territories as too speculative, because it was unclear how long such territories would go unassigned to another franchisee. Final Award 27. She granted damages calculated from his assigned territory. *Id*. She also determined that LeClair "had actual business experience under the Agreement from which the calculations were determined," and that Budget Blinds "presented no evidence to contradict the evidence as submitted by Respondent." *Id.* LeClair introduced data from his time as a franchisee on the price and cost of goods sold, (Ex. A, Baker Decl.), monthly sales reports from Budget Blind's accounting system with gross retail sales and costs (Ex. G, Mulcahy Decl.), and his own bank statements. He prepared summaries derived from his data, and also testified that his calculations as to net profit were an underestimate, given that he would have continued developing his business if he had continued as a franchisee. *See* Tr. 841.

      The evidence submitted is relevant to Budget Blinds' final contention that the arbitrator did not discount LeClair's future losses to present value, as required by *Noble v. Tweedy*, 90 Cal. App. 2d 738, 747 (1949). The Court in *Noble* stated that reducing future damages to present value "is in full harmony with the fundamental principle that damages should be compensatory only, and has frequently been the subject of judicial approval." *Id.* Budget Blinds cited *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 412 (1985) for the proposition that although no particular method for determining present is required by federal law, "utter failure to instruct the jury that present value is the proper measure of a damages award is error."

      Budget Blinds' contention that the arbitrator did not discount a projection of five years of damages does not, under the facts of this case, provide grounds to vacate the award. Both *Noble* and *Dickerson* support the idea that a decisionmaker generally should consider discounting future losses to present value and that under the Federal Employers' Liability Act, not providing the jury with that proper information is an error. *Dickerson*, 470 U.S. at 412. But, as the Supreme Court noted in a case dealing with lost employee wages, "by its very nature," a calculation for lost earnings "must be a rough approximation. Because the lost stream can never be predicted with complete confidence, any lump sum represents only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-1101-DOC (MLGx)            Date: January 16, 2013
                                                                                                       Page 10

---

a 'rough and ready' effort to put the plaintiff in the position he would have been in had he not been injured." *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 546 (1983).

      Thus it is not apparent on the face of the award that the damages amount was blatant, willful error, given that the arbitrator stated that she considered all the evidence, Final Award 27, that evidence included an argument about discounting to present value, and that evidence included testimony that, if credited, would support the idea that LeClair's damages estimate was an underestimate, *see* Tr. 841. For those reasons, and mindful of the standard of review for arbitration awards, this Court does not find Budget Blinds has made the necessary showing to support vacating the award.

### c. Arbitrator's Allowance Of Certain Submissions

      Budget Blinds argues that the arbitrator exceeded her authority by asking for submissions after the arbitration on the proper measure of damages, violating JAMS Rules 17(c) and 22(h). Rule 17(c), dealing with discovery obligations, provides that parties have a continuing obligation to provide each other with documents, and that "[d]ocuments that were not previously exchanged . . . may not be considered by the Arbitrator at the Hearing, unless . . . upon a showing of good cause." Rule 22(h) states, as relevant here, that if an arbitrator defers the closing of the hearing for post-hearing briefs, then "the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs."

      This Court finds that the JAMS Rules provide sufficient leeway for the arbitrator to accept the submissions that Budget Blinds contests. As noted in Rule 22(a), "The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined reasonable and appropriate to do so." Further, the arbitrator in her Interim Award reserved jurisdiction "to hear and determine all post hearing issues, including *but not limited to*" several issues, and she then directed LeClair to submit a calculation of net profit damages based "upon evidence in the record," limited to sales within his territory. Interim Award 24-25 (emphasis added). The arbitrator also provided Budget Blinds with time to submit any response to LeClair's post-hearing filing on damages calculations. Interim Award 25. Any JAMS arbitrator also may sua sponte re-open a hearing at any time before an award is rendered. And the arbitrator can consider witness affidavits "even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as the Arbitrator deems appropriate." JAMS Rule 22(e).

      Budget Blinds argues that LeClair's submitted calculations (Exs. W & Y to Mulcahy Decl.) were "new, contradictory and speculative 'evidence.'" Pet. 20. Declarations and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 12-1101-DOC (MLGx)    Date: January 16, 2013
Page 11

---

exhibits submitted as part of those calculations "monumentally expanded upon and changed the testimony LeClair offered at the arbitration hearing," Budget Blinds has argued, simply citing to the filings as self-evident proof of this characterization.  Mot. 21.  While Budget Blinds contends that it was not allowed "to meaningfully respond with additional testimony and evidence on damages," Pet. 21 n.12 & Pet. 22, Budget Blinds does not argue that it made a request to the arbitrator about offering any such testimony or evidence.  The arbitrator noted that Budget Blinds instead devoted much of its brief in response to the damages calculation to relitigating the merits of the constructive termination finding.  Final Award 23 n.33.

In conclusion, the JAMS Rules provided the arbitrator with sufficient flexibility to accept LeClair's calculations on damages, and Budget Blinds has not shown here that the arbitrator willfully committed a blatant error, and that such error was apparent on the face of the award.  *D.R. Horton*, 361 F. Supp. 2d at 1100.

* * *

In *Kyocera*, the Ninth Circuit, sitting en banc, made clear that the "risk that arbitrators may construe the governing law imperfectly . . . or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes."  341 F.3d at 1003.  Given such a lenient standard of review, Budget Blinds has not met its burden to show that errors made, if any, were beyond the leeway afforded to arbitration awards.

### IV. Conclusion

Thus, for the reasons above, the Arbitration Award is hereby CONFIRMED, the Petition To Vacate is DENIED.  The Court reserves ruling on LeClair's Motion For Sanctions.

The Clerk shall serve a copy of this Order on all parties.


MINUTES FORM 11
CIVIL-GEN                                          Initials of Deputy Clerk: jcb